

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00172-CV

———————————————

JAMIE ARIZOLA, Appellant

V.

CRISTINA GABRIELA RODRIGUEZ, Appellee

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC30-FM2024-2644

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Raising four issues, Jamie Arizola appeals from the trial court's two-year protective order—entered by default when neither Arizola nor his attorney appeared at the hearing—under which he was forbidden, among other things, to contact his former live-in girlfriend Cristina Rodriguez, their adult daughter Makiyla Arizola, and Makiyla's boyfriend[1] Andres Mendoza, all of whom lived in Rodriguez's home after Rodriguez and Arizola separated. Because (1) Arizola did not establish that the trial judge was disqualified from presiding over this matter; (2) the protective order's terms did not exceed the scope of the pleadings; (3) the protective order was supported by the pleadings and gave Arizola adequate notice of the claims; and (4) Arizola's lawyer received the order extending the temporary protective order, which included rescheduling the protective-order hearing, we will affirm.

## I. Background

Acting on Rodriguez's behalf, the Wichita County Criminal District Attorney's Office applied for a protective order against Arizola on December 19, 2024. Alleging that Arizola had engaged in family violence, the State sought an order to protect Rodriguez and any "member of [her] family or household." In her supporting affidavit, Rodriguez recounted a December 15 incident in which Arizola showed up at

---

[1]Although Rodriguez referred to Mendoza as her son-in-law, for purposes of this opinion we assume that Arizola's characterization is correct. The distinction is not legally significant to our disposition.

a family dinner and pulled her hair in anger "in front of his cousins[, Rodriguez's] daughter[,] and family." The previous month, according to the affidavit, Arizola had become angry with Rodriguez when she went inside the house to "take care of [her] kids and go to sleep," bit her on the face, and pulled a gun on Makiyla and Mendoza, threatening all of them.[2]

The next day, the judge of the 30th District Court of Wichita County, Texas, entered a temporary ex parte protective order that encompassed Rodriguez and her (unspecified) family or household members and that set a hearing for January 2, 2025, before the 89th District Court of Wichita County. On the morning of January 2, Arizola's lawyer moved for a continuance of that day's setting because she was already scheduled to appear at hearings on January 2 and 3 in other counties.[3] The State did not oppose the continuance and moved separately to extend the protective order because "[Arizola] has hired an attorney." The efiling certificate shows that the State's motion to extend was sent to Arizola's lawyer's email address on January 2, 2025, at 10:05:24 a.m.

Later that same day, the presiding judge of the 30th District Court extended the temporary protective order:

---

[2]At the protective-order hearing, Rodriguez testified that Arizola was arrested for that November incident "where he bit [her] in the face and he pulled out a gun on [her] children."

[3]Arizola's continuance motion shows a conference with the State on December 31, 2024.

**ORDER EXTENDING TEMPORARY EX PARTE PROTECTIVE ORDER**

On this day, came on to be heard Applicant's request for extension of temporary ex parte protective order prohibiting Respondent, JAMIE ARIZOLA, from the acts set forth in Applicant's Application for Protective Order, and it appearing that said temporary ex parte protective order should be extended;

IT IS THEREFORE ORDERED that the Temporary Ex Parte Protective Order signed on the 20th day of December, 2024, be and is hereby extended.

IT IS THEREFORE ORDERED that this cause be reset for ___14th___ day of _____January_____, 2025, at __10:00__ o'clock __a__.m., in the 89th District Court of Wichita County, Texas.

The clerk of the court is ORDERED to send a copy of this order to the law enforcement agency having jurisdiction in the city or county where CRISTINA GABRIELA RODRIGUEZ resides.

The clerk of the court is ORDERED to send a copy of this order to the Wichita County Sheriff's Department and the Wichita Falls Police Department.

Signed this __2nd__ day of _____January_____, 2025.

_____
Judge Presiding

The efiling certificate shows that this order was sent to Arizola's lawyer's email address at 2:06:49 p.m. on January 2, 2025.

Neither Arizola nor his lawyer appeared at the hearing on January 14. Judge Dobie Kosub of the 89th District Court heard Rodriguez's testimony, admitted certain documents into evidence, and entered the default protective order at issue.

Almost a month later, Arizola moved for a new trial, arguing that the relief granted—the order protecting Rodriguez, Makiyla, and Mendoza—exceeded the relief pleaded for—allegedly, an order protecting only Rodriguez—and that his lawyer's

4

overlooking the January 14 resetting contained in the January 2 order extending the temporary protective order was not intentional or the result of conscious indifference.[4] Arizola's new-trial motion was overruled by operation of law, and he appealed.

## II. Analysis

### A. Arizola has not shown that Judge Kosub was disqualified.

In his first issue, Arizola contends that Texas Rule of Civil Procedure 18b(a)(1) prohibited Judge Kosub from presiding over any case involving the Wichita County Criminal District Attorney's Office and filed—like this one—before January 1, 2025, the date that Judge Kosub was sworn in as presiding judge of the 89th District Court. *See* Tex. R. Civ. P. 18b(a)(1). That rule requires a judge to disqualify himself in any proceeding in which he "has served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter." *Id.*

---

[4]In his new-trial motion, Arizola referred to the efiling certificates and acknowledged the two "sent" times on the State's motion to extend and the trial court's order extending the temporary protective order, but he complained that "neither communication indicated that it contained notice of a reset of the hearing and counsel expected to receive notice of the reset of the hearing." Arizola's motion also stated that he had viable and meritorious defenses to Rodriguez's allegations, that he was unaware of the hearing's resetting, that his "failure to appear and defend was not the result of any error on his part," and that a new trial would serve the interests of justice without delaying or injuring Rodriguez.

5

According to Arizola, Judge Kosub was the First Assistant in the Wichita County Criminal District Attorney's Office up until December 31, 2024, "with supervisory responsibility for all cases filed by the [District Attorney] and supervisory authority over, and practiced with the prosecuting attorneys." But Arizola points to nothing in the record showing either that Judge Kosub worked for the District Attorney all the way up until December 31 after his November 2024 election to the trial bench or that he had any supervisory or other role with the District Attorney on December 19, when that office applied for a protective order on Rodriguez's behalf, or on December 20, when the temporary ex parte protective order was entered and scheduled for a January 2 hearing.

The trial-court record reveals but one mention of Judge Kosub's status: in Arizola's January 2 continuance motion, he stated that "the hearing has been set before the judge in the 89th District Court. Such a setting would not be appropriate because this matter arose and was filed at a time that Judge Kosub was still associated with and employed by the [District Attorney's] office." On appeal, Arizola has filed a motion asking us to take judicial notice that:

- "[u]ntil December 31, 2024, the Hon. Dobie Kosub was the First Assistant to the Wichita County [Criminal] District Attorney";

- as first assistant, he "supervised all civil and criminal cases filed by the Wichita County [Criminal] District Attorney, as well as practiced with and supervised all the prosecutors in the District Attorney's Office";

- "[o]n December 20, 2024, while the Hon. Dobie Kosub was the First Assistant to the Wichita County [Criminal] District Attorney, the Judge of the 30th

6

District Court set a hearing in [this case] to take place on [sic] in the 89th District Court on January 2, 2025"; and

- "[b]ecause as of December 20, 2024," Arizola had been arrested and jailed "subject to prosecution by the Wichita County [Criminal] District Attorney's Office" under then-first-assistant-District Attorney Kosub's supervision, Judge Kosub "was disqualified pursuant to Tex. R. Civ. P. 18b(1)(a) [sic] from presiding over any cases involving [Arizola]."

As sole support for this timeline in his motion to take judicial notice, Arizola attached what purport to be two (unauthenticated) online newspaper articles from the Wichita Falls Times Record News.

Although Arizola does not cite or discuss Texas Rule of Evidence 201 in urging us to accept the contents of these articles as adjudicative facts, we assume that he relies on that rule's allowing us to "judicially notice a fact that is not subject to reasonable dispute" because it either "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Tex. R. Evid. 201(b).

We can take judicial notice for the first time on appeal of adjudicative facts that are matters of public record and not subject to reasonable dispute, but our power to do so is discretionary and not exercised lightly. *See Cnty. of El Paso v. Navar*, 584 S.W.3d 73, 77–78 (Tex. App.—El Paso 2018, no pet.) (noting that appellate courts "are generally reluctant" to take judicial notice of a fact on appeal (citing *Hendee v. Dewhurst*, 228 S.W.3d 354, 377 (Tex. App.—Austin 2007, pet. denied))).

7

Whether Judge Kosub worked at the District Attorney's office up through December 31, 2024, or was still working there on December 19 or 20 is not a fact that we would view as generally known within Wichita County (nor does Arizola so argue). And we are not obliged to consider newspapers as "sources whose accuracy cannot reasonably be questioned." *See Martin v. State*, 07-98-0134-CR, 1999 WL 7889, at *6 (Tex. App.—Amarillo Jan. 11, 1999, pet. ref'd) (not designated for publication). In *Martin*, the appellant argued that his conviction was void because his motion to depose a complaining witness was denied by a presiding municipal judge who was ostensibly "not authorized to sit as a judge" because her law license was suspended at the time. *Id.* In support of that allegation, the appellant cited, "without more," a newspaper article. *Id.* Declining to take judicial notice of that article's contents, the Amarillo court stated that "[a]lthough we may judicially know that the Fort Worth Star Telegram is published within the territorial limits of the trial court, with all due deference, a newspaper report does not rise to the level of a source 'whose accuracy cannot be reasonably questioned.'" *Id.*; *cf. Est. of Hemsley*, 460 S.W.3d 629, 638–39 (Tex. App.—El Paso 2014, pet. denied) (considering obituary published in newspaper to be matter of public record from which fact of burial could be judicially noticed); *Hudson v. Markum*, 931 S.W.2d 336, 337 n.1 (Tex. App.—Dallas 1996, no writ) (taking judicial notice on appeal of funeral and death announcement in newspaper).

But even if we opted to take judicial notice of the two unauthenticated articles attached to his motion, Arizola's position suffers from a more fundamental problem: their contents do not support his contentions. The first looks like a Times Record article from May 2023 reporting on Judge Kosub's campaign kick-off to run for the 89th District Court; Arizola draws our attention to portions identifying Judge Kosub as "currently the county's first assistant district attorney" and "who has spent 22 years in the [District Attorney's] Office." The other article, dated January 2, 2025, reported on Judge Kosub's New Year's Day swearing in as the new judge of the 89th District Court and described him as "no stranger to the courthouse, having served in the District Attorney's Office for many years." Neither article discusses his duties as the DA's first assistant, much less says that he was working in that capacity on December 20, 2024, as Arizola asserts.[5]

We decline to take judicial notice of the newspaper articles, deny Arizola's motion that we do so, and overrule Arizola's first issue because he has not shown that Judge Kosub was disqualified under Rule 18b(a)(1) from presiding over this matter.[6]

---

[5]In any event, the State responded to Arizola's motion to take judicial notice with an affidavit from the custodian of the Wichita County Criminal District Attorney's employment records attaching a business record showing Judge Kosub's last day of employment as December 2, 2024.

[6]Rodriguez has moved, without opposition, to supplement her briefing with a Rule 18b(a)(1) case from our sister court that was decided after this appeal was submitted. *See In re B.P.*, 06-25-00050-CV, 2025 WL 3533274, at *5 (Tex. App.—Texarkana Dec. 10, 2025, no pet. h.) (mem. op.). We grant the motion to supplement

9

## B. The protective order did not grant relief exceeding or beyond what a fair reading of the application supported.

In his second and third issues, which we discuss together, Arizola argues that the trial court abused its discretion by entering a protective order that ordered more or greater relief than the application supported or requested and that he was thereby deprived of due process and due course of law because he did not receive fair notice and an opportunity to respond. These arguments lack merit.

A default judgment must be supported by the pleadings. *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979); *see* Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings."); *In re Marriage of Day*, 497 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("This rule is a specific application of the more general principle that a party may not be granted relief in the absence of pleadings to support that relief, unless the request for relief is tried by consent—a situation that cannot occur in the context of a default judgment."). "A trial court abuses its discretion by awarding relief to a person who has not requested such relief in a live pleading." *Day*, 497 S.W.3d at 89; *see Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). A petition should be liberally construed in the pleader's favor but must also suffice to provide fair notice so that the opposing party can "ascertain the nature and basic issues of the controversy and the relevant testimony." *Rodriguez v.*

---

and have reviewed *B.P.*, but conclude that it does not affect how we have analyzed Arizola's first issue.

*Cortez*, No. 02-23-00004-CV, 2023 WL 4780577, at *2 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.) (quoting *Taylor v. Taylor*, 337 S.W.3d 398, 401 (Tex. App.—Fort Worth 2011, no pet.)).

A trial court must render a protective order upon application if it finds that family violence has occurred and is likely to occur in the future. *See* Tex. Fam. Code Ann. §§ 81.001, 85.001(b). "Family violence" is

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1). "Family" includes individuals who are parents of the same child. *Id.* § 71.003.

The Texas Family Code allows for a temporary ex parte order "for the protection of the applicant or any other member of the family or household of the applicant." *Id.* § 83.001(a). If, after the eventual hearing on the application, the trial court finds—as happened in this case—that family violence occurred, Section 85.022 lays out various conditions that the trial court can impose in a protective order. *Id.* § 85.022. As mandated by Section 85.0221(a), the trial court here used the standard protective-order form "created by the Office of Court Administration of the Texas Judicial System under Section 72.039, Government Code," which contains a section titled "Conditions and Terms of Order." *Id.* § 85.0221(a); *see* https://txcourts.gov/

11

forms/standardized-protective-order-forms/. This OCA form specifically authorizes a trial court to impose conditions concerning an applicant and any family or household members of the applicant.

Rodriguez's December 19 application for a temporary ex parte protective order sought to prohibit Arizola from—among other things—threatening, committing family violence against, directly communicating with, or going within 100 yards of a residence or place of business of Rodriguez "or a member of [her] family or household." Her supporting affidavit recounted that Arizola had bit her face, pulled a gun on her "daughter and son[-]in[-]law," and "threaten[ed] us" on November 25, 2024,[7] in addition to other incidents.

Consistent with the application, the temporary ex parte protective order prohibited Arizola from communicating with or taking various actions against Rodriguez "or a member of [her] family or household." Arizola does not dispute that he was served with notice of the application and the temporary order on December 20, 2024. Arizola also does not dispute that Makiyla is Rodriguez's family member or that Mendoza is a member of Rodriguez's household—indeed, in his motion for new

---

[7]This incident resulted in Arizola's eventual arrest on December 19, 2024, for aggravated assault with a deadly weapon based on details provided in an arrest-warrant affidavit by "the victim who is the boyfriend of Jamie Arizola's daughter" and for a separate charge of assault family violence based on Rodriguez's affidavit. Also on December 19—the day of Rodriguez's application—a magistrate entered an Order for Emergency Protection on behalf of Makiyla. That order similarly extended to "any member of [Makiyla's] family or household."

trial, Arizola asserted that Rodriguez concocted the "allegations of violence" "because [she] and [Arizola] do not agree that their daughter, Makiyla, should be permitted to openly live in their home with her boyfriend, Andres Mendoza."[8]

Rodriguez's protective-order application, the temporary ex parte protective order, and the final protective order all specify that the protection was to extend and did extend beyond simply Rodriguez to encompass her family or household members. *See K.B. v. E.B.*, No. 02-24-00481-CV, 2025 WL 2264196, at *7 (Tex. App.—Fort Worth Aug. 7, 2025, pet. denied) (mem. op.) (in appeal involving protective order issued under Texas Code of Criminal Procedure after appellant's conviction for stalking ex-wife, rejecting appellant's argument that order wrongfully included in its scope of protected persons the couple's adult children, where Section 7B.005 of criminal-procedure code explicitly authorizes trial court to include "any member of the applicant's family or household" and where ex-wife's application specifically asked for protective order to apply to her family and household).[9] We conclude that the

---

[8]Arizola does not try to explain away his arrest for aggravated assault with a deadly weapon based on Mendoza's report of having had a gun pulled on him.

[9]We reject Arizola's reliance on *Fontenot v. Fontenot*, 667 S.W.3d 894, 905–08 (Tex. App.—Houston [14th Dist.] 2023, no pet.). That case held that a protective order exceeded the scope of the pleadings where the applicant had requested protection solely on behalf of her minor child but the order designated both the child and the applicant as protected persons. Nothing in *Fontenot* suggests that the application included the family-or-household-member language that appears in Rodriguez's application. We are similarly unpersuaded by Arizola's other authorities disapproving relief that improperly exceeded the scope of pleadings for the simple reason that the pleadings and the relief granted here expose no substantive mismatch.

13

protective order naming Makiyla and Mendoza in addition to Rodriguez did not exceed the scope of the pleadings and that Arizola had fair notice of what Rodriguez was seeking on behalf of herself and her family and household members.

This is particularly so because December 19 saw (1) Arizola's arrest for aggravated assault with a deadly weapon involving Mendoza arising out of the gun-pointing incident, (2) his arrest for assault family violence involving Rodriguez, (3) Makiyla's emergency protective order, and (4) Rodriguez's application for a temporary ex parte protective order—four things all arising out of the November 25 incident that Rodriguez outlined in her protective-order affidavit. At the January 14 hearing, Rodriguez testified about that incident and placed into evidence the two arrest warrants and the emergency protective order for Makiyla. Even assuming that the generic "family or household" language would not have covered Makiyla and Mendoza, the trial court had before it sufficient evidence from which to specifically include them as protected persons. *Cf. Bell v. State*, 656 S.W.3d 163, 167–70 (Tex. App.—Fort Worth 2022, no pet.) (holding that son was covered by protective order naming father as protected person even though son was "not specifically named"; "because the order stated that the court had found that 'the following protective orders [were] for the safety and welfare and the best interest of [father] and other members of the family,' on its face, the order sought to protect the safety and welfare of Son").

We overrule Arizola's second and third issues.

14

**C. Arizola received constitutionally adequate notice of the reset hearing.**

In his fourth issue, Arizola contends that his lawyer did not receive "constitutionally adequate notice of the resetting of the trial in this case as required by Art. 1 § 19 of the Texas Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution," resulting in a violation of due process. *See* Tex. Const. art. 1, § 19; U.S. Const. Amends. V, XIV. The record shows otherwise.

As noted, the temporary ex parte protective order that issued on December 20 contained a January 2, 2025 hearing date. Arizola's lawyer moved for a continuance on the morning of January 2 without opposition. That same day—January 2—the temporary protective order was extended with a one-page order that was unquestionably received by his lawyer and that, as we reproduced above, plainly included a new setting of January 14, 2025.[10] Arizola thus had 12 days' notice of the resetting and a total of 25 days' notice from when he was served with the protective order on December 20. These facts are unlike the facts of the cases he cites. *See Zubiate v. Zubiate*, No. 11-16-00102-CV, 2017 WL 1749747, at *2 (Tex. App.—Eastland May 4, 2017, no pet.) (mem. op.) (setting aside default protective order where the "record show[ed that] the father gave no notice of any kind to the mother, whether under the Texas Rules of Civil Procedure or the Texas Family Code, concerning the resetting of the January 22 hearing"); *Birdwell v. Texins Credit Union*,

---

[10]Arizola argues that the new date and time were "buried" in the document. We disagree.

15

843 S.W.2d 246, 250 (Tex. App.—Texarkana 1992, no writ) (in summary-judgment appeal, holding that nonmovant who received requisite 21-day notice of original hearing was entitled to only "reasonable" notice of resetting, which court construed as seven days); *Ex parte Peterson*, 444 S.W.2d 286, 289 (Tex. 1969) (holding due-process violation where relators were jailed after failing to appear at reset hearing of which they were not given any notice); *Ex parte Sturdivant*, 544 S.W.2d 512, 514 (Tex. App.— Texarkana 1976, no writ) (holding that default contempt order entered with only two days' notice of show-cause hearing constituted denial of due process); *Dupuy v. Williams*, No. 14-19-00463-CV, 2021 WL 5707430, at *6 (Tex. App.—Houston [14th Dist.] Dec. 2, 2021, pet. denied) (mem. op.) (holding that under Texas Code of Criminal Procedure, a trial court may grant a default protective order—there, a lifetime order based on appellant's stalking of former client's ex-wife—on as little as 48 hours' notice if respondent fails to move for continuance); *Dix v. Foster*, No. 06-22-00040-CV, 2022 WL 7208630, at *2–3 (Tex. App.—Texarkana Oct. 13, 2022, no pet.) (mem. op.) (rejecting due-process challenge to default protective order where respondent was given five days' notice of hearing).

Although his argument under this issue is not altogether clear, and the cases he cites are not apropos, we infer from other parts of his brief that he is complaining that his lawyer was not consulted about a January 14 setting, that the State's motion to extend the temporary protective order did not mention that his lawyer was unavailable on January 2 to confer about a new date, and that "[t]here was nothing in the

16

notification of '*Order Extending . . .*' that indicated that a hearing—without confirming Respondent's counsel's availability—had been set for January 14, 2025."

Arizola's new-trial motion gave more detail about his setting-notice complaint. In that motion, he revealed that although his lawyer received, through efile, the State's motion to extend and the order extending the temporary protective order, "neither communication indicated that it contained notice of a reset of the hearing and counsel expected to receive notice of the reset of the hearing." The motion continued:

> On January 2, 2025, at 2 pm, counsel was in Marshall, Texas in Court participating in a Motion for New Trial at the request and on behalf of another attorney who unexpectedly failed to appear for the hearing, and afterwards spent over two hours with a distressed client. Counsel for Jamie Arizola was unexpectedly distracted. On January 3, 2025, Counsel was present in Montgomery County, Texas in another hearing. By the time counsel returned to her office she failed to take a closer look at the two emails and discover that one contained the notice of reset.

Although this paragraph does not state when Arizola's lawyer returned to her office, she could have had as many as 11 days to review the order that plainly reset the hearing for January 14. Her self-described failure to take a "closer look" is not the equivalent of failure to receive "constitutionally adequate notice" of the January 14 setting.[11]

We overrule Arizola's fourth issue.

---

[11]On appeal, Arizola does not argue lack of conscious indifference, having meritorious defenses, or lack of prejudice from granting a new trial, as his new-trial motion recited. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939) (establishing standards for setting aside default judgments). Rather, his fourth issue is limited to expressing the due-process concerns that we have rejected.

### III. Conclusion

Having overruled each of Arizola's issues, we affirm the trial court's order.


/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  February 12, 2026